United States v. Almonte Good morning, Your Honors. May it please the Court, I'm appearing on behalf of Maria Almonte, and I'd like to discuss with the Court first this morning the issue of whether there was error in the district court not finding an obstruction of justice enhancement prior to considering the alleged false testimony of Ms. Almonte during the trial. Breyer. Can I ask you on that point, can you direct this to any authority that says that a sentencing judge must consider false testimony under the Guidelines 3C.1.1? Yes, and I think the most salient citation is Booker itself. Booker makes as a rule across the board that district court judges must first consider the Guidelines. And here we have a question. It's clearly something that fell under the obstruction of justice enhancement of 3C.1.1. And it's important to me to say that there was error in the  during the trial. you're permitted to consider all of those things. There's no limitations, right? Yes, but must first consider any applicable guidelines. And I would say that actually if you think about it, this raises an important issue. If there is the ability to bypass a guideline that's directly applicable and making a decision whether that guideline applies, then isn't it possible then that district court judges can simply go straight to 3553A factors and ignore the guidelines? You can't do that. And there was no request here for the Court to make a finding that once the Court said I'm considering the false testimony, the defense attorney did not say, well, wait a second, if you're considering the false testimony, you have to make a finding under 3C.1.1. In fact, we have said you can't even object to a 3C.1.1 lack of a finding unless you ask for a finding, right? So there was no request here that the judge make a finding of any type, whether with respect to 3C.1.1 or some independent finding under 3553A if such were required, right? Well, first of all, the guidelines are intended to guide. And here, the guidelines in the guidance under the 3C.1.1, the guidelines, it's a high standard, and the willfulness standard is applicable here. So then we have, it should have guided the judges. Now, the judge would have had the discretion. Had the judge said that there was the let's say the obstruction of justice enhancement applied or did not apply, could still, under the 3553A factors, have varied it as the judge determined as something relating to. Roberts, in Thompson we said the judge doesn't have to make the findings under 3C.1.1 unless there's an objection to it. So you don't have to make the finding on the 3C.1.1 unless there's an objection to it. There was no objection here. You're saying notwithstanding there was no objection to the finding of false testimony, and notwithstanding you wouldn't then under Thompson have to make the finding under 3C.1.1. Somehow under the 3553A factors, there's now a requirement that if you think the testimony was false, that you have to make all these findings. It's completely inconsistent with Thompson. I would say that the procedure, first, is the presentence report. And the presentence report here did not recommend an obstruction of justice enhancement. And then the onus was on the government at that point to object. The government did not object. So what it does is it puts the whole issue badly, let's say, or doesn't bring it to you. I think there are due process concerns that happen here then where it's not highlighted, particularly in this particular case where willfulness is really an issue. And here what we have, Ms. Almonte, you know, she had serious mental health issues, including schizophrenia, caused by her horrendous upbringing, raped when she was 5 and through her childhood. These were causes of these serious mental illnesses. Certainly the case could have been, should have been made that it bore on whether or not her testimony at trial was willful. Here the government, in its sentencing memorandum, said that her answers were incredible and incoherent. Well, I submit that that's evidence that we have a person who is not operating well. She even ---- Alito, when she testified that JF did not work for her in any capacity, that was ---- Alito, she testified when she took the stand that JF did not work for her in any capacity. You're saying that was, she didn't remember? Well, no, I mean ---- I mean, that was pretty quick. Actually, she testified to think that she did interact with JF, right? We look at schizophrenia. One of the criteria, one of the things is psychosis. There's delusion, detachment from reality. A person suffering from those conditions that mental illness is explainable then as to why she would have a deluded state of mind. So what she said, she thought the reality of her situation was. Didn't the ---- That was all should have been brought in the context of a challenge to an obstruction of justice enhancement. Didn't the district court consider various mitigating factors? It did. It did so. Didn't the district court understand, said that it understood the ---- your client's background and what she had to go through and in fact made it, differentiated between how she was and how things were going in the previous two years? Did so, Your Honor. I would say, but also what the district court said in explaining why she gave the 20-year sentence. We had a mandatory minimum of 15 years. The pre-sentence report recommended that mandatory minimum sentence and the district court said, I'm going to 20 because of the false testimony. So it was a driving factor in the 20 years. If I can move to the second point in my brief, and this has to do with whether there was sufficient evidence under count two of the indictment. And this is the issue in dealing with this mens re element of whether what satisfies knowing reckless disregard or a reasonable opportunity to observe the victim. And this is raised in the context of whether someone is, the victim is under 14 years of age. And we have an enhanced penalty in that regard. This case is different in one way from Robinson, although I submit it's analytically the same, but I do raise it to the Court because I think we really all have to, I'm thinking in terms of the Court and how would I approach this. And I think the first thing is, does that make any difference that we're talking about under 14 years of age as opposed to under 18 years of age, which was in Robinson? And the reason I'm raising it to the Court, and I'm just saying that I think, well, the government is saying here that subparagraph C applies. There is, what I would say to the Court is it's a matter of statutory construction. I can see the statutory construction in it. The statute is not entirely clear. I'm highlighting it for the Court because subparagraph C then has on the tail end dealing with under 18 years of age. Now, what I would say, and this is actually in support of the government's position that subparagraph C applies there, is that, well, and this is in Robinson, how you would engage in statutory construction. And is it common sense? What's the purpose of the statute? Roberts. Isn't the language exactly the same as the language in Robinson under 1591? Well, the difference, and I'm really, as an officer of the Court, I'm raising this to highlight, just to say that I think it's something the Court needs to take a look at. I think it comes out, and I have an argument about what does it mean to say reasonable opportunity to observe. But I think it's a preliminary thing that I would not skip over, and that is we are Now, what I would say is that if you look at subparagraph C, it talks about under 18 years of age, but obviously the government and the appellant here are saying, well, obviously it means also with regard to a determination of under 14 years of age. I'm just simply bringing it to the Court's attention. I understand. I understand the argument you're making. In this case, your client testified that she met J.F. in person twice and thought that J.F. looked, and I'm quoting, pretty young. Right. What I'd like to do, Judge Katzmann, is I think it's important, and Robinson I don't think got into it because of this, what I'm about to say as much as is relevant in this case, and that is what is the meaning of the words reasonable opportunity to observe? Now, there are key words there, reasonable opportunity. If this was simply seeing someone, then the words reasonable opportunity would be superfluous. Now, of course, we don't construe a statute to render words superfluous, and we know in the law, we repeatedly see the word reasonable. Reasonable depends on the circumstances. So say, for example, if there were a nine-year-old and someone had one viewing, one observation of a nine-year-old, obviously that would be sufficient to satisfy that reasonable opportunity to observe. What I submit in this case is, and how it goes to the sufficiency of the evidence is, we have someone who is within one year of 14 years of age. And in a situation like that, where there is so close, what is a reasonable opportunity to observe?  You're changing the statute to say a reasonable opportunity to observe to determine what the age of the victim was. That's not what Congress, Congress created strict liability. They substituted knowledge. Once you have an opportunity to observe, it doesn't matter whether or not you'd be able to realize from 10, 15, or 20 interactions, that's irrelevant. You know, one thing I would say is, I think this is a unique statute in sex crime statutes. And the reason I would say it's unique is that it's actually conditional strict liability. In other words, a condition precedent must be satisfied before strict liability. It becomes a strict liability statute. So those critical words, what does it mean to have a reasonable opportunity to observe, is very important and not simply something, okay, it's automatically a strict liability statute. What I'm also saying, for example, is that the word observe, we use that word often, and it does mean to observe appearance. But observe is a broader word. Observe relates to also what the person says, observing how they interact. You know, we have science experiments, and I've conducted them. Kagan. Kagan. Wasn't this essentially a job interview that she was conducting with the ---- Well, a brief, a brief. And again, going back to Judge Katzmann's question about what she said, you know, she seemed very young, the important thing is there observing then includes what did the victim say in return. And in return, the victim said, essentially, I'm an experienced prostitute. I've done this before. Giving an indication that she's older than ---- In other words, here it's saying, you seem young. And she's saying, I'm not that young because I'm experienced. So what I'm saying is that there's importance in the length of time. We don't have a length of time here. We have a brief window. But the testimony that J.F. looked young, looked pretty young, was made, you know, after, obviously, viewing, and after hearing whatever J.F. may have said to Almonte. And Almonte said, you look pretty young. It's an ambiguous statement as what does it mean. Does it mean you look younger than 18? I mean, looking young is a relative term. We don't know the context. We do know the response. And the response is an effort to say to Almonte, effectively, I'm older. I see my time is up. Any other questions? Thank you, Your Honors. May it please the Court, my name is Stephanie Lake, and I'm an Assistant United States Attorney in the Southern District of New York. I represent the United States on this appeal, and I represented the United States at trial. As the Court's questions have reflected, United States v. Robinson and Section 1591C are clear that as long as the government proves that the defendant had a reasonable opportunity to observe the minor victim in a sex trafficking case, the government does not need to prove that the defendant actually knew or recklessly disregarded the victim's age. Here, there was ample evidence in the record that the defendant did have a reasonable opportunity to observe the minor victim who was under 14 years old. We refer to her in our brief as J.F. That evidence included the defendant's own testimony that she had met J.F. two times, cooperating witness testimony about the first interaction the defendant had with J.F. Afterwards, the defendant sold J.F. for sex to an adult man. There were also text messages between J.F. and one of the defendant's minor sisters who also worked in the defendant's sex trafficking business that demonstrated that J.F. had continued to work for the defendant after that first meeting. From all of this, it was entirely reasonable for the jury to conclude that the defendant had had a reasonable opportunity to observe the minor victim. Again, as the Court's questions have reflected on the defendant's second argument about the procedural reasonableness of the sentence, Judge Wood was entirely justified in considering the defendant's false testimony under Section 3553A. There's no limitation on the district court's ability to consider that sort of information in fashioning its sentence. How do you respond to the argument that a lower sentence was warranted because of the circumstances of child abuse and the improvements of rehabilitation in the previous two years before sentencing? All of those arguments were before Judge Wood at sentencing, and Judge Wood fairly considered them. The defendant is essentially trying to relitigate the sentencing here and to argue to this panel that Judge Wood should have weighed those factors differently than she actually did. This Court's precedents are clear that it's up to the district court how it should weigh factors like the defendant's history, upbringing, any challenges that the defendant had had. In addition here, the district court judge did give the defendant a significant variance below the guidelines range. Her guidelines were life. She was sentenced to 20 years, which was only five years above the mandatory minimum sentence. So all of those factors were fairly considered at the sentencing. Unless the panel has any further questions, the government will rest on its submission. Thank you. Thank you. With regard to this mens re standard and the reasonable opportunity to observe, I just want to share with the Court, and this — I have found it to be a difficult statute, honestly, to understand and correctly interpret. I'm giving the Court what I think is the correct understanding. And I'll share here what a view, as I looked over and over the statute. Knowing and reckless disregard. If we think about it in terms of subjectively what the defendant knew or recklessly disregarded, it's a subjective standard. The reasonable opportunity to observe, I submit, is an objective standard. It isn't — doesn't take into consideration what, in fact, the defendant thought or disregarded. But what would a — let's call it a reasonable person or an objective person abstractly would have — would it — is it fair to say that that objective person would have had a reasonable opportunity to observe? So — and also, I think it needs to be interpreted in context of what it was intended to substitute. And it's clearly intended to substitute this something for knowledge or recklessness, but in an objective standard. So it's — in that context is why I'm saying it has this broader interpretation of what reasonable opportunity to observe is. Is it your view that Robinson was — was thus wrongly decided? No. No. Actually, all of my arguments are consistent with Robinson. I know Judge Kearse concurred in the case, and I — my views in construction are consistent with the precedent in that case. Whether Robinson went too far. No. I think that we're dealing with a situation that actually wasn't addressed in Robinson. And I think that this is the next step of what Robinson was dealing with. And if I may quickly on the reasonable — Let me just ask you one question on that quickly. So if a defendant saw someone 25 times, but the individual said they were 16, told them the age of 16 and said under 14, and maybe they looked over 14, your position would be that under the — your reading of the statute, that defendant would be not guilty, right? Well, no. Actually, what I would — Even though they saw the person 25 times. If then not whatever the defendant claims they knew or didn't know. But at this point, an objective person standing in the shoes, faced with this — I know, but you're backdooring in all the issues about trying to determine someone's age, which is exactly what Congress wanted to avoid by putting in this third requirement, which is a substitute for that. If you have a reasonable opportunity to see the person, it doesn't matter what they said, it doesn't matter what they look like, all those things become irrelevant is what Congress was doing. Well, that, Judge Bianco — At least under Robinson, that's what we said. Well — I could read you the lines from Robinson. I did. I read the lines. But I think Robinson was ambiguous where I have gone here in this discussion. What I'm saying here is that, say, let's take the Robinson facts. There was this intimate relationship. So — and it went over a period of time. Things were said during that relationship. So an objective person looking at that situation would have said, well, look, there was this reasonable opportunity to observe over multiple periods of time. Therefore, there was no need for the — for the government to prove that the defendant actually knew she was 18 years of age or recklessly disregarded. That was when they looked at the pre-amended version of the statute. On the amended version of the statute, which added this reasonable opportunity requirement, they said they didn't look at any of that stuff. In the opinion, which Judge Kearse was on that panel, they said there was a reasonable opportunity as to the amended version, case closed. And then on the pre-amended version, they went through all these things that you're talking about. Well, I respectfully — this idea of what it meant. And actually, what I would say is that in Robinson, it talks about the legislative history and the — what went back and forth between the House and Senate. I would submit that back and forth towards what I'm saying, that this was not a pure strict liability statute, that it was intended to have something put in more that had to be met, and it was — it was significant. Thank you. Thank you. Thank you both for your arguments. The Court will reserve decision.